# GRAHAM and another *vs.* ELMORE and another.

1841.
First Circuit.

Graham
*vs.*
Elmore.

Where a solicitor has appeared in a cause, and a demurrer is filed, signed by solicitors who have not appeared, the demurrer may be treated as without signature and as a nullity.

But where the demurrer in such case, was treated as a nullity by the complainants, and a default was entered for want of an answer, and it appeared that the signature of the wrong solicitors was put to the demurrer by mistake, and that injustice would be done if the defendant should not be permitted to answer, the default *was set aside on terms.*

Where there are joint defendants. upon a pro confesso obtained against one, the complainant cannot, before the cause is at issue or in readiness for hearing against the other, enter a final decree and issue execution thereon against the party against whom the bill has been taken as confessed, and leave the cause to proceed against the other defendant.

It is the uniform rule, that a final decree, or an interlocutory degree, which, in a great measure, decides the merits of the cause, cannot be pronounced until all the parties to the bill, and all the parties in interest, are before the court.

This court will not adjudge upon a part of the case; it will not make a final decree until the case is properly presented, in such form as will enable the court to make a final disposition of the case, and do justice to all the parties.

Where a cause is in readiness for hearing against one defendant, and there is another defendant as to whom the cause is not in readiness, the defendant who has appeared and answered, cannot notice the cause for hearing, but must move to dismiss the bill for want of prosecution.

A decree by default may be set aside, on motion, and the court decides the question on motion, where the facts appear, and there is nothing to dispute about but the law of the court.

The bill in this case, charged that the defendant, William <span>March 16.</span> H. Elmore, had obtained goods of the complainants, who are merchants in New York, to the amount of about $600, (but did not otherwise describe the goods,) on the credit of one Frederick W. H. Elmore, by representing to the complainants that he was the agent of F. W. H. Elmore to purchase goods for him on a credit; that this representation as to the agency, was entirely false, and that William H. Elmore purchased these goods, on this fradulent representation, for his own benefit, and that he executed to the complainants two notes for about $300, each, subscribed with the name of F. W. H. Elmore, in his assumed capacity as agent; that after these goods were obtained, they were forwarded to Detroit, where William H. Elmore, for some time, carried on mercantile business under the name of F. W. H. Elmore; that subsequently, an assignment of this store of goods was made by an instrument

in writing, signed F. W. H. Elmore, by W. H. Elmore, his attorney, to Hicks, and in which was also, a covenant that it passed all right and title of W. H. Elmore, to the goods. The bill charged that when this assignment was made, Hicks had knowledge of the fraud of Elmore in obtaining complainants' goods; and contained also, a charge in relation to the assignment of the goods in the store, in the following terms: "among which said merchandize, your complainants' charge was included; the merchandize, so as aforesaid, purchased of your complainants, in the portion of them which remained undisposed of by the said William H. Elmore, but which particular part or portion of the same, complainants were ignorant.

The bill further charged, that complainants parted with their goods in the confidence in the truth of this representation; that they did not observe the fraud until after the notes were due and until after they had demanded payment of them at the store where William H. Elmore had traded; that after discovering the fraud, they demanded a return of the goods of Hicks and Elmore, or the unsold portion of them, which they refused to return; that complainant had commenced no legal proceedings against defendants, except the filing of this bill.

The first prayer of the bill was, that defendants might answer, the defendant Hicks, under oath, but the defendant Elmore, without oath, from an inspection of the inventory, invoices and books, what goods were obtained from complainant and what portion of them were assigned to defendant Hicks; what portion of them were sold by William H. Elmore, before the assignment, and what portion by Hicks, since the assignment, and for what; that a receiver, with the usual powers, might be appointed, of complainants' goods in the hands of defendants, or either of them, and that the unsold portion of them be delivered to the complainants; that Elmore be liable for the interest of the whole goods, to the time of the assignment to Hicks, and for the amount of goods sold by him; that both defendants, or either of them, account for the goods sold by Hicks, since the assignment, and the interest upon the unsold portion of them since the assignment, and be personally liable therefor; that defendants be enjoined from assigning or.

disposing of the goods or their proceeds, and for such other
and further relief herein, as the court may order.

Or secondly, that defendants might answer and be enjoined
as aforesaid; that they be decreed to return the unsold por-
tion of the goods to complainants, and to account and be per-
sonally liable, as aforesaid, and for complainants' costs. The
complainants prayed for general relief. Their prayers were
all in the disjunctive.

The bill was taken, pro confesso, and after the cause had
been set down on the orders pro confesso, for a hearing and
notice for a final decree, H. N. Walker for defendant, Hicks,
applied on affidavit to the chancellor for leave to withdraw his
demurrer, to have the order, pro confesso, against him opened,
and leave to answer. The affidavit stated that previous to the
entry of the default, H. N. Walker gave notice of retainer for
Hicks, and that a demurrer had been filed on the part of Hicks,
and that by mistake the name of the firm of Bates, Walker &
Douglass was signed to the demurrer; that complainants coun-
sel had treated the demurer as a nullity on that account and
had entered the default. The chancellor granted an order that
the complainants show cause before him at his chambers, why
the demurrer should not be withdrawn; the order, pro confes-
so, opened and defendant, Hicks, have leave to answer; and
that defendants solicitor serve on the complainants solicitor,
the affidavit of merits; the answer prepared to be filed and a
copy of the order to show cause at least four days before the
time of hearing.

B. F. Cooper, for complainants. Read an affidavit, from
which it appeared that on entering the order, pro confesso, the
complainants had served a notice upon the defendants solici-
tor, of the entry of such order, and offered to open the same
without costs, provided a full and sufficient answer were ser-
ved before the first day of the term, for which the cause had
been set down for a hearing on the orders, pro confesso; that
no answer had been filed and that two special terms had elaps-
ed since the entry of the orders, pro confesso; and that de-

fendants had taken no previous steps in the case, and insisted

1. That the application of the defendant was now too late. 2 *John. Ch.*, 242; 4 *Paige*, 288, 439.

2. That the affidavit of merits was not sufficiently full and gave no sufficient excuse for the delay; that the answer was exceptionable for insufficiency; he examined the whole case upon the bill and answer served, and insisted on the authority of the decision in 6 *Paige*, 371; 5 *Ib.*, 164; 1 *Hoffman*, 551, 7; that the order, pro confesso, should not be opened, as from the answer presented it appeared that the defendant, although attempting to interpose, the defence of a bona fide purchaser, without notice, had nevertheless admitted and shown such a knowledge of facts and circumstances relating to the fraud as charged, to put him on inquiry and to charge him with constructive notice of the fraud; that no injustice, therefore, would be done to the defendant by refusing this motion, but injustice would be done to the complainant if it were granted.

3. That the opening of the order is a matter resting in the sound discretion of the court, who are to see that no injustice is done. If it be now opened, the defendants should be required to pay all costs of the suit subsequent to the proceedings to take the order, pro confesso, and the costs of the motion. They should put in a sufficient answer and submit to such equitable terms as the court may impose, to expedite the cause, and to ascertain the facts of the case. In this case, the defendants should, as equitable terms be required to stipulate, that the complainants under the issue, may if they shall so elect, examine the defendant, Elmore, as a witness, without a waiver of any liability to them, and if complainants shall so elect, they may themselves also be examined as witnesses in the cause, and that a commission may be taken out to obtain their testimony. The tendency of chancery practice in modern times, is to let in evidence from all quarters to satisfy the conscience of the court.

On a reference to account, and in other causes referred to a master, it is every day's practice to examine both the complainants and defendants. In England when a feigned issue

is awarded, (a proceeding which rests in the sound discretion of the court,) it orders the parties to be examined before the jury, and it is assigned as the reason, that the parties are not witnesses for themselves, but for the court, which is presumed to be able to judge both of the credibility and the competency of the witnesses. 1 *John. Ch.*, 631; 3 *Paige*, 407; 1 *Ib.*, 430. As to the examination of parties 4 *Mad. R.*, 236; 1 *Swan's*, 39; *Gresley's Eq. E.*, 241–4; 393–5.

H. N. WALKER, for defendant, cited 3 *Chit. Gen. Pr.*, 525; 7 *Paige*, 370; 6 *Ib.*, 371; insisted that the demurrer was regular and a valid proceeding in the cause until set aside. That if the demurrer were irregular he should be allowed to answer on terms.

THE CHANCELLOR. The demurrer having been signed by solicitors, whose appearance had not been entered in this case, might, where another solicitor had appeared for this defendant, be treated as without signature, and as a nullity. 3 *Chitty's Gen. Prac.*, 524.

But the demurrer having been filed in this form by mistake, the court would relieve the party from the consequence, if satisfied that injustice would be done, if the party should not be permitted to answer.

The answer discloses, *first*, that, as defendant, Hicks, believes, W. H. Elmore was authorized to purchase the goods in the name of F. W. H. Elmore. If this be true, no fraud was committed. *Second*, that he purchased the goods without any knowledge of the complainants' claim. (*See Mowry vs. Walsh*, 8 *Cowen R.*, 238.)

The answer further discloses such circumstances, in relation to the knowledge of F. W. H. Elmore of the manner in which the business was conducted, as must, in all probability, establish his liability, if any doubt existed on that subject.

The circumstance of the defendant, Hicks, having taken a separate guaranty of W. H. Elmore, is urged as strong evidence of fraud. It may, perhaps, lead to a conjecture, that Hicks was suspicious that W. H. Elmore had some individual

First Circuit.
Graham
*vs.*
Elmore.

interest in the property; but, accompanied.as it is, by the positive denial of Hicks, of any knowledge of the complainants' claims, and, also, the statement in his answer, that, according to his knowledge and belief, the goods were really the property of F. W. H. Elmore, cannot be regarded as such a badge of fraud, as would render the sale to him fraudulent and void.

The answer is objected to, as not being full and perfect. The rule laid down in *Hunt* vs. *Wallace,* 6 *Paige R.,* 377, and which has before been recognized in this court, in the case of the *Bank of Michigan* vs. *Williams,* (*ante* 219,) is, that the defendant must either furnish the answer which he proposes to put in, or state his defence so fully in his affidavit, that the court may see that injustice would probably be done, if the order, taking the bill as confessed, is permitted to stand.

The court should require a full answer, and, if satisfied that the answer was intentionally evasive, would refuse to set aside the order.

Such is not the case here. The answer discloses sufficient to show, that injustice would probably be done, if the order is permitted to stand. Should the court undertake to look into a further or amended answer, it would involve a re-examination of the papers, which may as well be done by a master. Besides, the court is not fully satisfied that the answer will be found insufficient; but, as the court is inclined to think the complainant may be entitled to a further discovery in some particulars, the defendant should be compelled to answer such exceptions, as may be allowed, promptly.

The order, taking the bill as confessed, must be set aside, upon payment of costs of entering the order, and of this motion, and the defendant's undertaking to answer such exceptions as may be allowed by the master, within five days after the same may be filed, and upon stipulating that the complainants may be examined as to the particular goods sold to Elmore, saving all exceptions, except as to the competency of receiving such testimony.

After the order of the chancellor, directing the opening of the order, *pro confesso*, entered against Hicks, and after Hicks  had filed and served a copy of his answer, denying the fraud charged against Elmore, and setting up the defence of a *bona fide* purchaser, without notice, &c.,

B. F. Cooper, for complainants, moved, *ex parte*, on the or- der, *pro confesso*, against Elmore, for want of appearance, for a final decree. Cited 1 *Smith's Ch. Prac.*, 64, 174–5.

No person appearing for defendant, Elmore, the complainants took their final decree, *ex parte*, against Elmore, for the full amount claimed in the bill, and costs.

· H. N. Walker gave notice of retainer for defendant El- more, and moved (on the affidavit of Elmore, of irregularities, &c.,) for an order for complainants to show cause why the final decree entered December 8, against Elmore, should not be set aside for irregularity. The chancellor granted the order to show cause.

B. F. Cooper, for complainants, showed cause.

I. The decree in this cause cannot be set aside on the ground of the insufficiency of the papers on which the motion is founded.

1. Because after the entry of an order, pro confesso, it is a general rule, that it cannot be set aside without a production of the answer intended to be filed. The exception in the books was in the case of a *non resident*, and then the motion was made before enrolment. 5 *Paige*, 164; 6 *Paige*, 377; The last case was before decree entered.

2. After the *enrolment* of the decree, the rule is now believed to be universal, that the application to set it aside must be on the production of the sworn answer proposed to be filed with a full affidavit of merits. 1 *Hoffm. Pr.*, 551; 1 *Johns. Ch.*, 541. 631; 1 *Paige*, 430; 3 *Ib.*, 407; 2 *Ves. & Beam.*, 184; 3 *Johns. Ch.*, 424.

II. If the papers on which the motion is founded, be not insufficient in their character, they are too defective to allow the relief sought for by the defendant.

1. The paper served as an affidavit, is in form, a petition. Petitions must always be sworn to, and an exact copy with the jurat, served. 1 *Hopks.*, 101; 3 *Paige*, 280.

2. If the paper is an affidavit, an exact copy, including the jurat, should be served; it should be governed by the rules relating to equity pleadings under oath. 1 *Hopks.*, 101; 3 *Paige*, 280.

3. It is entitled in the cause of complainant *vs.* Elmore and Hicks. It asks for relief in two causes, viz: complainant *vs.* Hicks and Elmore, and complainant *vs.* Elmore. This is entirely irregular. The relief sought for, should have been confined to one cause, or the papers should have been entitled in both causes, or 'there should have been two sets of papers, and two motions. No indictment would lie on this affidavit, for any false swearing as to matters in the case of Elmore, alone. 2 *Cowen*, 509; *Graham's Pr.*, 2d Ed., 678. *The order staying the examination of the defendant, is wholly irregular, having been granted without any papers being served in the cause, to warrant it.*

4. The notice for this motion, is signed H. N. Walker, who is only solicitor in the case of Hicks and Elmore, and is entitled in that cause alone. *Vide complainants' affidavit.* It differs from the order to show cause. The notice rests upon *irregularity* alone.

5. *The order* to show cause, is entered on motion of Douglass and Walker, who are not solicitors in the cause in which the papers and notice of motion is entitled. The order, as entered, is irregular, and if not a nullity, should be vacated. None, save the solicitors in a cause, can make motions therein. *Hopks.*, 369.

III. The decree must be set aside for the want of proper evidence, that defendant, Elmore, has a good and sufficient defence.

1. The affidavit and petition, have none of the usual formula of an affidavit of merits.

2. It does not directly state that defendant has *merits*, but states it in such a manner as to leave it doubtful what he does mean.

3. The affidavit mis-states the effect of Hick's answer; the answer really states that Hicks is a bona fide purchaser, without notice; it alledges that he knew nothing of the representations made to complainants, but *believes* Elmore had authority.

4. Defendants have no defence under this answer, as the fradulent representations are not in issue. It is a defence, *independent* of them, and good, whether they were made or not. The defence arises from a distinct matter, and subsequent to Elmore's fraud.

5. The affidavit shows that Elmore's neglect to appear and answer, as required by the order and practice of the court, was the result of *deliberation* and *design*—a mode of defence, selected as well calculated to embarrass complainants, as a regular defence, according to the rules and orders of the court.

6. It appears that this was done by the advice of counsel. Hicks, it seems by his defence, is to defend Elmore, and Elmore to be saved the expenses of a solicitor. Elmore is to take the chances of successful defence by Hicks, and get rid of the debt, and the trouble of litigation and its costs. If Hicks fails, at the end of a protracted litigation, then Elmore seems to suppose he may come in, renew the fight, and take the chances of war. In the meantime, these two complainants are to stand, and see these two defendants use up their goods, without paying for them, and encounter the delays and losses and vexations of litigation. Will a court of equity listen to an affidavit of such a character as this? It would be a stain on the administration of justice.

IV. The cases of opening decrees are all limited to the opening the enrolment. After creditor's bill is filed, no such application has been or should be granted; 6 *Paige*, 254. The affidavit of complainants shows that the order to answer is nearly out in the creditor's bill. The order to stay proceedings and show cause, is served after defendant is on his examination to discover his property. After taking the chances of the first suit, he has taken all the chances of the second, to the time when he is about to be compelled to discover his property. If this motion be granted, its effects in other suits will be most

disastrous. Defendants will lie by until called to answer or discover, when they will thus seek to come in, after a great lapse of time. In the meantime, their property will be either fairly or fraudulently disposed of, and the complainants will be thrown back to the filing of the bill, to fight a defendant who has thus managed to delay his proceedings and discover his strength.

V. If the decree, pro confesso, can be set aside after filing a creditor's bill, there is no sufficient ground for it shown on this application, either in the complainant's mode of proceeding, or in the merits disclosed by the defendant's affidavit.

It is objected, first: That the affidavit shows execution put in the sheriff's hands on the return day. Affidavit of complainants denies it; it was some days before the return. If it were not, no collusion is charged by defendants; without this charge, the return of the sheriff cannot be impeached. 2 Paige, 408.

It is objected, second: That the decree against Elmore was entered up while the cause was not even at issue against Hicks; answer, there is a decree, pro confesso, against Hicks, not yet opened.

Answer 2. That bill for fraud is like an action in the case at law, for a tort. There one defendant may suffer judgment by default, another may give a cognovit; one may be found not guilty by verdict, and the other guilty; in such case, the tort is joint and several. So in this bill for fraud; there may be an order, pro confesso, against one defendant, and a decree while the cause may proceed against the other, who may have a decree in his favor. Smith's pr., 174–5; 2 Paige, 102; 7 Johns. Ch., 194; this bill is in substance, an action on the case. Why wait, after an admission, by Elmore, of the fraud? 7 Paige, 448; 1 Peters, 80.

VI. If either of the two last mentioned grounds are sufficient to set aside a decree after enrolment, it can only be on a bill of review, or an appeal. If there is error, the error is one of law. Cooper's pl., 88–9, 90.

VII. If the decree is set aside, it should be on the terms of paying all the costs of both suits and of this motion. 1 Johns. Ch., 541, 631; 1 Paige, 430; 3 Ib., 407.

The affidavit and examination of complainants show, that during defendant's delay in answering, he has appropriated F. W. H. Elmore's property in such a w..y, that if the affidavit is true, complainants can get nothing of F. W. H. Elmore. This is as effectually preventing the payment of complainant's debt, as if a witness had died, as in 1 *Johns. Ch.*, 541.

VIII. The complainants are entitled to the costs of this motion, and the court may give interleventory costs, as for a contempt of court, to be ascertained in their amount by the court, notwithstanding the act of February 10, 1841, (relating to fees.) If this motion is made for irregularity, it is too late, 4 *Paige*, 288; *Graham's pr.*, (2 ed.,) 684, 748; 2 *Jac. law dict.*, 51.

H. N. WALKER, for Elmore.

1. The defence of one party avails his co-defendant, if the cause depends upon the same facts. 1 *Hoff. Pr.*, 554; 10 *John Rep.*, 534.

2. A cause cannot be heard against several defendants in the absence of the rest, although no decree be asked against them. The bill must first be formally dismissed as to them. 4 *Bridgman's Digest*, 283; 2 *Paige R.*, 572; 1 *Peter's Digest*, 441; 1 *Paige R.*, 548, 549; 5 *Paige R.*, 638; 2 *John. Ch. R.*, 614.

THE CHANCELLOR. The principal question involved in this case is, whether, where there are joint defendants, upon a *pro confesso* being obtained against one defendant, and before the cause is at issue, or in readiness for a hearing against the other defendant, the complainant may enter a final decree and issue execution against the party against whom the bill has been taken as confessed, and leave the cause to proceed against the other defendant or defendants. After a very careful examination, I have been unable to find any case in which this question has been distinctly presented. It is the uniform rule, that a final decree, or an interlocutory decree, which in a great measure decides the merits of the cause, cannot be pronounced until all the parties to the bill, and all the parties in interest are before the court. 5 *Wheaton*, 542.

This rule is usually applied to cases where the complainant

First Circuit.

Graham
*vs.*
Elmore.

has not made proper parties to his bill, or where the proper parties having been made to the bill, the complainant has not taken the necessary steps to bring them before the court; but does not the reason of the rule apply to a case like the present; the party who has answered in this cause, although as to that part of the bill which relates to Elmore alone, he denies the allegations upon his knowledge and belief, has put in issue the whole merits of the bill.

Before the cause is ready for a hearing, the complainant enters his final decree against the defendant who has not appeared, and issues his execution thereon for the full amount claimed, leaving the cause to proceed against the other defendant, before the parties, or rather before the merits of the cause are before the court, so as to enable it to make a final decree upon the whole case, when it may perhaps become the duty of the court, upon the hearing, to declare that the complainants have no equity whatever. I think the rule above stated, goes to the extent, that the court will not adjudge upon a part of the case in this way. It will not make a final decree, until the cause is properly presented, in such a form as will enable the court to make a final disposition of the cause, and do justice to all parties to the suit. In 2 *Paige*, 572, *City Bank* vs. *Bangs*, it is decided, that where the defendants, or any of them, deny the allegations in the complainant's bill, or set up distinct facts in bar of his right to file the bill, he must file a replication, give rules to produce witnesses, and close the proofs before the cause is heard. It is settled, that although a cause may be in readiness for a hearing against one defendant, and when other defendants as to whom the cause is not in readiness, the defendant who has appeared and answered cannot notice the cause for a hearing, but must move to dismiss the bill for want of prosecution. *Vermyled* vs. *Odell*, 4 *Paige*, 422. This he cannot do, if the cause is in such a situation that it may be noticed for a hearing by either party. This is confirmatory of the rule, that the court will not grant a final decree, until the cause is in readiness for a hearing as to all the parties.

It has been urged that the court cannot interfere in this way,

but that the defendant must be left to his appeal, or a bill of review. And this brings us to another objection to this form of proceeding. I do not see how an appeal can be taken in this stage of the cause. The case is still pending and proceeding in this court, as against one defendant, while it may be proceeding in the appellate court, upon appeal, against the other defendant, if the appeal could be sustained by the supreme court. It would render the practice and proceedings anomalous and inconvenient, if this court were to pursue this course, and render final decrees in succession, against several defendants, in this way, as fast as the complainant should perfect his proceedings against each of the several defendants. A decree by default may be set aside on motion; 1 *Hoffman's Pr.*, 419; and the court decides, on motion, where the facts appear, and there is noting to dispute about but the law of the court. *Ib.*, 420.

Some other questions were raised at the argument. It is objected that the order to show cause was entered on motion of Douglass and Walker, when H. N. Walker is the solicitor of record. The papers are signed and notices given by H. N. Walker, the solicitor in the cause, and the order to show cause being granted on motion of Douglass and Walker, is immaterial. The complainants could not been have misled, and the order would have been valid, without the insertion of the name of any solicitor. The fact that the jurat annexed to the petition, was not annexed to the copy served, would prevent its being used as proof of the facts alledged in the petition, as the party is bound by the copy served. But the motion is founded upon the record and proceedings in the cause, as well as upon petition, which disclose the facts in the same manner. The objection that the papers being only entitled in the case of Elmore and Hicks, cannot be used in the case against Elmore alone, is technically correct, and the order must be confined to that case. But from the view I have taken, that the decree taken against Elmore, in the case of Elmore and Hicks, was irregularly entered, and must be set aside; it must follow that all proceedings founded upon that decree, must fall with it.

After the defendant has omitted to make his defence, as has been the case here, I interfere in this way with reluctance. But the case being presented, I am bound to settle the practice of taking decrees against one of several defendants, in this way, either in one way or the other, and of the inconvenience and irregularity of this course of proceeding, I entertain no doubt. The final decree entered, in this cause against Elmore, must be set aside and vacated, leaving the order taking the bill as confessed against him, of force, so that no obstacle may exist to taking a decree, whenever the cause shall be in readiness, for a final disposition; or if the complainant shall so elect, with leave to set aside the *pro confesso*, and require an answer.

Decree set aside.