HAMBLY *v.* DELAWARE, M. & V. R. Co., Substituted, etc.

(*Circuit Court, D. Delaware.* July 21, 1884.)

1. COVENANT—IMPLIED CONTRACT—CONDITION PRECEDENT—DAMAGES—PLEADING.

By articles of agreement under seal, dated May 8th, executed by H. and a railroad company, H. agreed to furnish labor and materials for laying ties and rails on the third division of the company's road, from their depot grounds at G. to the shore of the Delaware bay, near L., and on the projecting wharf or pier to be constructed in connection therewith,—about 17 miles in all; and the said third division was to be ballasted and finished by the first of August next, if the rails and ties could be had by that time. H. was also to build and construct the wharf in conformity with the specifications set out in the agreement. The work was to be begun within 30 days after signing the articles; all the piles of the wharf to be driven by the last day of July; and the said wharf and the whole of the said division were to be finished and completed by the thirty-first of October ensuing. It was further agreed that immediately upon signing the said articles the plaintiff should subscribe for $150,000 of the capital stock of the company, certificates for which were to be issued to him in part compensation for his services, etc. On the twentieth of August, while H. was engaged in the performance of his contract, and was ready, willing, and able to carry on, prosecute, and finish the same in manner and form, etc., he was prevented by the company from so doing, and was wholly discharged; and thereupon he brought his action for a breach of the covenant. The declaration contains seven counts, to five of which the defendant demurred, alleging that the covenants declared on were not the covenants of the defendant, but were repugnant to the express covenants in the articles of agreement; also, that the plaintiff, having neglected or failed to subscribe for the stock, begin the work, or finish the third division at the times agreed on, could not maintain this action. *Held,* that the agreement on the part of the plaintiff to do the work, and on the part of the defendant to pay for it, raised an implied covenant on the part of the latter to permit the plaintiff to do the work; that the time stipulations were not conditions precedent, not being made so in terms, nor can they be implied, being only agreements of the plaintiff, for the breach of which he might be liable to damages, if the defendant could show any damages resulting therefrom. If plaintiff's delinquency in these particulars evinced an intention on his part to abandon the contract, and not perform it at all, it would be evidence on that issue; and abandonment would have authorized the defendant to consider the contract at an end, and to stop the plaintiff from further intermeddling with the road and pier. The defendant could have pleaded justification of the prevention and discharge of the plaintiff, and put in evidence his failure on the time stipulations, his want of reasonable diligence, etc., in support of such a plea.

2. SAME—DAMAGES.

Where one party agrees to perform a service or work which necessarily requires time and progress in the performance, and is to receive a compensation from the other party therefor, if the party for whom the service or work is to be done puts an end to the performance, either before its commencement or

during its progress, the other party, though able and willing to proceed, cannot recover compensation for work not done, but can only recover damages for the breach of the contract; and those damages will consist of his outlay already incurred, and of the profits which he would have realized had he been permitted to complete the work; or in place of outlay, when the compensation for the service is divisible, he may recover compensation for the service already performed, and damages for being prevented from completing his contract.

3. PLEADING—ISSUES RAISED BY PLEA.

Pleas which attempt to raise an immaterial issue, or take issue upon a matter of law, *held* bad on demurrer.

In Covenant on Demurrers.

*Anthony Higgins* and *Edward G. Bradford, Jr.*, for plaintiff.

*Jacob Moore* and *William C. Spruance*, for defendant.

Before BRADLEY, Justice, and WALES, J.

BRADLEY, Justice. This is an action of covenant, brought on an agreement under seal, made the eighth of May, 1869, between the plaintiff and the original defendant, whereby the plaintiff agreed to lay the superstructure of the defendant's railroad from Georgetown to Delaware bay, near Lewes, about 17 miles, under the direction of the company's engineer; and to build a pier out into the bay, according to certain specifications, and to furnish the cross-ties, iron rails, timber, and other materials therefor. The plaintiff further agreed to begin the work within 30 days from the execution of the agreement; to complete the road to the depot grounds at Lewes by the first day of August then next, if the rails and ties could be had by that time; to have the piles of the pier driven by the last day of July; and to complete the whole work by the thirty-first day of October. In compensation for the work thus contracted for, the defendant agreed to pay the plaintiff $176,000 in the internal improvement bonds of the state of Delaware, (to be furnished to the defendant as provided for by an act of the legislature passed in 1865, and the amendments thereof,) and $150,000 in certificates of full-paid stock of the company, for which the plaintiff was to subscribe on the execution of the contract. This consideration was to be paid as follows: Sixty thousand dollars as soon as that amount of materials should be furnished and labor performed, according to the estimate of the engineer, and monthly thereafter, upon like estimates, in amounts equal to the materials furnished and labor done during each month, respectively, with any balance before unsettled for; the part payments to be in bonds and stock, proportional to the respective amounts of bonds and stock to be paid for the whole work.

The declaration has seven counts, in each of which the agreement is set forth in full. The first and second counts rely upon the implied agreement of the defendant to permit the plaintiff to carry on the work to its completion, and allege, by way of breach, that the defendant prevented the plaintiff from doing so, and thereby deprived him of the profits of the undertaking. The statement of this implied covenant in the first count, as finally amended and settled by consent of the parties, is to the following effect, namely: That in

and by the said articles of agreement the defendant covenanted and agreed with the plaintiff to permit him to carry on, prosecute, and perform the work agreed to be done, until the same should be fully done and completed, in manner as provided in, and according to the provisions and requirements of, said articles of agreement, and the plan, design, and specifications therein referred to, or until the thirty-first day of October, 1869, whichever should first happen. In the second count it is slightly varied, stating the implied covenant to be to permit the plaintiff to perform and complete the work by the thirty-first day of October, 1869, in manner as provided in, and according to the provisions and requirements of, said articles of agreement, and the plan, design, and specifications therein referred to. The assignment of a breach in each case, after categorically alleging, in the terms of the covenant, that the defendant did not permit the plaintiff to perform and complete the work, proceeded to aver that, on the contrary, the defendant, before the work was fully done, to-wit, on the twentieth of August, 1869, did wrongfully prevent the plaintiff from carrying on and performing the said work, and from subscribing for the $150,000 stock of the company, although the plaintiff was in good faith engaged in carrying on and performing said work, and ready, willing, and able to carry it on to completion, as provided in the agreement, and to subscribe for said stock.

These counts were demurred to, on the grounds—*First*, that the implied covenant to permit the plaintiff to do the work is not correctly set out; *secondly*, that the breaches, as set forth, do not correspond with the covenant; and, *thirdly*, that the counts are generally bad.

I do not think that either of these grounds is well taken. I do not well see how the implied covenant could have been better stated. The agreement on the part of the plaintiff to do the work, and on the part of the defendant to pay for it, certainly raised an implied covenant on the part of the latter to permit the plaintiff to do the work in the manner, and according to the provisions and requirements, of the agreement. This is exactly what the plaintiff, in the first and second counts, states the implied covenant to have been. It was certainly not necessary to repeat all those terms and requirements over again. These stood as they were written, unaffected by the covenant as expressed or unexpressed, and qualifying its effect in either case alike. In the two counts the implied covenant is set forth in different terms, but amounting to substantially the same thing. The agreement was that the work should be completed *by* the thirty-first day of October. This means that it should be completed on that day, or before. The first count expresses it in both ways; the second simply uses the terms of the agreement—*by the thirty-first of October*. Both are right.

It is objected that the implied covenant, as defined in the declaration, obliged the defendant to permit the plaintiff to go on with the

work without complying with certain conditions, such as subscribing for stock immediately upon the execution of the agreement, commencing within 30 days, etc. If these were conditions, either precedent or subsequent, they are fitly provided for in the qualification annexed to the plaintiff's definition of the covenant, namely, to permit the plaintiff to prosecute and perform the work until performed and finished *in manner as provided in, and according to the provisions and requirements of, the articles of agreement, and the plan, design, and specifications therein referred to.*

The counsel of the defendant, however, contend that several of the "provisions and requirements" of the agreement were conditions precedent, the performance of which was necessary to entitle the plaintiff to proceed further with the work, and to claim the compensation provided for; and that he ought to have alleged performance of these conditions, or that the company prevented him from performing them; and they enumerate the following as such conditions precedent: (1) Subscribing for $150,000 capital stock upon the execution of the agreement; (2) beginning the work within 30 days therefrom; (3) having the piles of the pier driven by July 31st; (4) having the road ballasted and finished to the depot grounds at Lewes by the first of August. But I do not regard these engagements as conditions precedent, if they are conditions at all. They are not, in terms, made so by the parties themselves, and I cannot perceive any implied intent that they should be so. They stand simply on the agreement of the plaintiff, for the breach of which he might be liable to damages if the defendant could show any damages resulting therefrom. If the plaintiff's delinquency in these particulars evinced an intention on his part to abandon the contract, and not perform it at all, it would be evidence on that issue, and such abandonment would have authorized the defendant to consider the contract as at an end, and to stop the plaintiff from further intermeddling with the road and pier. This is the result of the most recent authority. *Mersey Steel & Iron Co.* v. *Naylor,* 9 Q. B. Div. 648. It may be added that, as to the subscription of stock, the plaintiff does allege that the company prevented him from subscribing; and the completion of parts of the work at particular times was necessarily a thing subsequent to the performance of a large part of it; but still only extended to a part, and not to the whole consideration of the contract, both being circumstances on which courts often rely in construing a covenant not to be a condition precedent.

The next alleged ground of demurrer, namely, that the breaches of covenant assigned in the first and second counts do not correspond with the covenants set forth therein, is equally insufficient. The breaches assigned seem to me directly to traverse and deny the keeping of the covenants. The plaintiff not only categorically alleges that the company did not permit him to prosecute and perform the work until completed in the manner provided, but proceeds to allege

specifically, that after the making of the agreement and before the thirty-first of October, 1869, to-wit, on the twentieth of August, 1869, the defendant wrongfully prevented him from prosecuting and performing the work, and wrongfully prevented him from further prosecuting it and from subscribing the stock, although the plaintiff was engaged in good faith in carrying it on, and was ready, willing, and able to complete the same and to subscribe for the stock, according to agreement. In what terms more direct the plaintiff could have alleged that the company prevented him from performing the contract on his part, it is somewhat difficult to see.

The third count sets forth an implied covenant on the part of the defendant, at or within a reasonable time after the completion of the entire work, to pay the plaintiff, in bonds and stock as aforesaid, any balance then unpaid; and then avers that the plaintiff, before the thirty-first of October, 1869, and before the work was completed, and before the defendant's engineer had made any estimate, to-wit, on the twentieth of August, 1869, was, in good faith, engaged in prosecuting the work, and was ready, willing, and able to continue it to completion, and ready and willing to subscribe for the $150,000 of stock; but that the defendant wrongfully prevented the plaintiff from prosecuting and performing the work, and from subscribing said stock, and thereby discharged him from further performance, and prevented the making of any estimate by the engineer; and the count then alleges as a breach of the covenant that the defendant has not paid the said plaintiff the said bonds or stock, or any part thereof. This count is demurred to on precisely the same grounds as the first and second counts are. It seems to me that the implied covenant to pay any balance that might be due after the completion of the work is well enough stated. But I think that the count is bad for other reasons. It proceeds upon the idea that the plaintiff is entitled to recover pay for work not done, on the ground that the defendant prevented him from performing his contract, and discharged him from the performance of it. He therefore claims the benefit of that rule of law by which one party is bound to perform his part of a contract when the other party has tendered performance on his part; as in a contract for purchase of land or a chattel, if the vendor tender a deed for the land, or delivery of the chattels, which is refused, he may compel the other party to pay the price agreed on; or, where any other thing is agreed to be done by one party which can be done at once, and the doing of which makes it the duty of the other party to pay a sum of money, or do some other thing, a tender—that is, a readiness and offer to do the thing so agreed to be done, and a refusal of it by the other party—will oblige the latter to pay or perform his part of the agreement; but when he has thus paid or performed he will be entitled to have the thing tendered. There are many cases of this sort. See Platt, Cov. 104; *Jones v. Barkley*, 2 Doug. 684; Add. Cont. §§ 880, 881; Benj. Sales, (3d Ed.) 859, and note. But

where one party agrees to perform a service or work which necessarily requires time and progress in the performance, and is to receive compensation 'from the other party therefor, if the party for whom the service or work is to be done puts an end to the performance, either before its commencement or during its progress, the other party, though able and willing to proceed, cannot recover compensation for work not done, but can only recover damages for the breach of the contract; and those damages will consist of his outlay already incurred, and of the profits which he would have realized had he been permitted to complete the work; or, in place of outlay, when the compensation for the service is divisible, he may recover compensation for the service already performed, and damages for being prevented from completing his contract. *U. S.* v. *Behan,* 110 U. S. 338; S. C. 4 Sup. Ct. Rep. 81. The third count, therefore, is based on an incorrect view of the law. It claims compensation for work not shown to be done, instead of claiming damages for expenditures incurred and profits lost, which is the only ground of claim that could properly be made, according to the facts disclosed. The defendant is therefore entitled to judgment on the demurrer.

· The fifth count alleges full performance of the contract on the part of the plaintiff by completing the road and pier on or before the thirty-first of August, 1870, and that the same was accepted by the defendant, without alleging any estimate or certificate of the engineer; breach; non-payment of compensation agreed on. The defendant demurs to this count for several reasons: (1) That it does not show that the work was completed within the time or times required; (2) nor that the company waived this condition; (3) nor that any estimates were made by the engineer; (4) that it does not show any breach by the company of any covenant required to be performed by it. I have already stated my opinion that the covenants as to time were not conditions precedent. This disposes of the first and second grounds of demurrer. The third ground, that no estimates are shown to have been made by the engineer, is not material. These estimates were only required for the purpose of determining the amount of work done, from time to time, to entitle the plaintiff to partial installments of payment. When the work was completed the whole compensation stipulated for became due, or any balance thereof remaining unpaid. The objection that no breach is assigned upon any covenant binding on the defendant is untenable. The breach assigned is non-payment of the bonds and stock stipulated for. This is sufficient. The defendant covenanted to pay the bonds and stock as compensation for the work; and, no time being fixed for payment, (except when partial installments should be required,) the implication is that payment was to be made on the completion of the work. This is the effect of the general covenant to pay. The breach of this covenant is sufficiently well assigned; and judgment must be for the plaintiff on the demurrer to the fifth count.

The sixth count being similar to the fifth, except that it alleges that estimates were duly made by the engineer, the like judgment must be given on the demurrer to that also.

To the fourth and seventh counts, respectively, the defendant interposed 21 pleas. Those to the fourth only need be considered. This count is similar to the third, except that it omits to set out the implied covenant which is set out in that count. Demurrers were put in to the second, third, sixth, seventh, eighth, tenth, eleventh, twelfth, thirteenth, fourteenth, and fifteenth pleas. Issue was joined, or tendered and accepted, on the others.

The second plea traverses the allegation of the count that the plaintiff, at the time of the alleged prevention, "was in good faith engaged in carrying on, prosecuting, and performing said work." This plea puts in issue the plaintiff's "good faith." It may be taken as admitting that the plaintiff was, in fact, "engaged in carrying on, prosecuting, and performing said work," but as denying that he was doing so "in good faith." Now, if the work was being properly done, of what possible consequence was it to the defendant whether it was being done in good faith or in bad faith. No attempt is made to show in what respect the plaintiff was acting in bad faith, or whether it in any way affected the due performance of the contract. I am clearly of opinion that the plea raises, or attempts to raise, an immaterial issue, and that judgment must be for the plaintiff on the demurrer.

The third plea avers that, at the time of the alleged prevention, the plaintiff was not (as in the fourth count it is stated that he was) ready, willing, and able to further carry on, prosecute, and perform the work until it should be completed. The averment of the fourth count thus traversed is a material one. If the plaintiff was not ready, willing, and able to further carry on the work, the defendant had a right to rescind the contract and stop the plaintiff from going on. Failure on his part to keep some of his engagements would not give the defendant such right; but inability or unwillingness to prosecute the work to completion would;—understanding by the term "unwillingness" an intent not to perform, but to abandon the contract, which is its legal effect in this connection. If, under this plea, the defendant should prove that the plaintiff, at the time he was prevented from going forward, did not intend to perform the contract, but meant to abandon its performance, or that he was absolutely unable to perform it from some inability which could not be overcome, (and nothing short of such proof would be sufficient,) it would be a good justification of the prevention charged; for it would be a good ground for rescinding the contract, which the prevention of the plaintiff from going on virtually amounts to.

Giving this effect to the plea, (which is its legitimate effect,) it is a good plea to the fourth count, and judgment should be given for the defendant on the demurrer thereto.

The sixth plea alleges that the defendant did not *wrongfully* dis-

charge the plaintiff from further carrying on the work. This is demurred to. It does not, in terms, traverse any averment of the count. The latter alleged that the defendant *wrongfully prevented* the plaintiff from further carrying on the work, and did *thereby* wholly discharge him from further carrying it on, and thereby prevent the making of any estimate by the engineer. The plea takes issue, not on the prevention of the work, (which is the thing charged,) but only on the alleged consequence of that prevention, namely, the discharge from further performance; and not even on that, but it denies that the defendant *wrongfully* discharged the plaintiff. The plea has two faults: *First,* in taking issue on an alleged result or consequence; and, *secondly,* in making the rightfulness or wrongfulness of that result a part of the issue. It is manifestly open to the objection of taking an issue upon matter of law. Judgment must be for the plaintiff on this demurrer.

The seventh and eighth pleas are amenable to precisely the same objection as is the sixth plea, and judgment must be for the plaintiff on the demurrers to those pleas.

The tenth plea alleges that the plaintiff neglected, *upon the execution of the contract,* "to subscribe for $150,000 of the capital stock of the company." The count alleges that the defendant wrongfully prevented the plaintiff from subscribing said stock. The plea, in answer to the charge of wrongfully preventing the plaintiff from further prosecuting the work after he had commenced to prosecute it, and from subscribing the stock, sets up the defense that he neglected to subscribe for the stock upon the execution of the contract, thus making the time of subscription a material part of the issue. I have already stated my opinion that the time was not a condition precedent; consequently, it was not material. To show that it was material, however, counsel for the defendant refers to the statute, by which the defendant was to have use of the state bonds, with which it had agreed to pay the plaintiff in part for his work. That statute required the stock of the defendant to be subscribed and paid in before the bonds would be issued. A supplement, passed a day or two prior to the execution of the agreement in this case, authorized the payment of the stock to be in material, work, and labor. It is evident, therefore, that the condition of obtaining the bonds (if the stock was not paid for in money) could not be performed until the material, work, and labor were supplied and furnished. Therefore the failure to make the subscription before the material, work, and labor were supplied (if made then) could make no difference to the defendant. There appears to be nothing in the statute, therefore, to make the exact time of subscription material. Judgment must be for the plaintiff on the tenth plea.

The eleventh plea is that the plaintiff did not begin the work in 30 days from the time of the execution of the agreement. From what has already been said, this is an immaterial matter. The time

of commencement was not a condition precedent.    Judgment must be for the plaintiff on the demurrer to the eleventh plea.

The fourteenth and fifteenth pleas are bad for the same reason, alleging only that the piles of the pier were not driven, and that the road was not completed to the station ground at Lewes in the respective times agreed on.

The twelfth plea alleges that the plaintiff did not, with reasonable diligence and within a reasonable time after the making of the agreement, *in good faith,* begin the work.    Here, again, the "good faith" of the plaintiff is put in issue; and, for the reasons stated in considering the demurrer to the second plea, the demurrer to the twelfth plea must be sustained, and judgment given thereon for the plaintiff.

The thirteenth plea alleges that the plaintiff did not, after he began the work, thenceforth exercise reasonable diligence in carrying on, prosecuting, and performing it.    Did the fact set up in this plea justify the defendant in putting an end to the contract by preventing the plaintiff from going on under it?    That is the question.    It may be that the plaintiff was under an implied contract to exercise reasonable diligence, and, not doing so, was liable in damages.    It may even be that his failure to exercise reasonable diligence was evidence from which a jury might infer an intention on his part to abandon and be no longer bound by the contract, which intention would justify the defendant in rescinding it.    But was it of itself a fact sufficient to justify such a course?    According to the law as laid down in the latest English authorities it was not.    Lord COLERIDGE, in delivering the judgment in *Freeth* v. *Burr,* L. R. 9 C. P. 208, Benj. Sales, (3d. Ed.) § 904, says:

"In cases of this sort, where the question is whether the one party is set free by the action of the other, the real matter for consideration is whether the acts or conduct of the one do or do not amount to an intimation of an intention to abandon and altogether refuse performance of the contract.  *  *  * I think it may be taken that the fair result of the decisions is that the true question is whether the acts and conduct of the party evince an intention no longer to be bound by the contract.    Now, non-payment on the one hand, or non-delivery on the other, may amount to such an act, or may be evidence for a jury of an intention wholly to abandon the contract and set the other party free."

This rule was approved in the recent case of *Mersey Steel & Iron Co.* v. *Naylor,* 9 Q. B. Div. 648, in the court of appeal, where Sir GEORGE JESSEL, and Lords Justices LINDLEY and BOWEN, stated the true test to be that suggested by Lord COLERIDGE, viz., whether the acts and conduct of the one party evince an intention to abandon and be no longer bound by the contract, and that this is a question of evidence.    See Benj. Sales, (3d Ed.) § 903.

Now, it cannot be said that failure to exercise reasonable diligence in prosecuting the work is, in law, proof of abandonment of the contract, though it may be evidence for a jury.    The defendant pleads it as sufficient proof, in law.    The proper plea would have

been that the plaintiff had abandoned the contract, and the want of reasonable diligence would have been evidence for the jury under that plea.

In my judgment the plea is bad, and the demurrer must be sustained.

This disposes of all the issues of law, and judgment will be entered accordingly.

WALES, J., *concurring.* On the eighth of May, 1869, a contract under seal was made by and between Thomas C. Hambly and the Junction & Breakwater Railroad Company, and this action was brought by the plaintiff against that company for the breach of its covenants. After the issuing of the writ, the company, by acts of the legislatures of Delaware and Maryland, became consolidated with two other railroad companies, the three becoming one corporation under the name of the Delaware, Maryland & Virginia Railroad Company, and all debts and liabilities of either of said original companies, upon their consolidation, attached to the new corporation, and became enforceable against it to the same extent as if said debts and liabilities had been contracted or incurred by it; and by proceedings had in this court the new company was made party defendant in lieu of the Junction & Breakwater Company, and has appeared by its attorneys and pleaded to the declaration.

By this contract the plaintiff agreed to furnish the requisite materials and perform the necessary work in laying down the cross-ties and iron rails on the third division of the company's road, extending from Georgetown to the shore of the Delaware bay, near Lewes, in the state of Delaware, a distance of 17 miles, and on the projecting wharf or pier to be constructed by him in connection therewith. The said division had already been graded and bridged. The materials and work were to be furnished and done under the direction of the company's engineer, "the said third division of the road of the said company to be ballasted, finished, and completed in a good and workmanlike manner, to the depot grounds at Lewes, by the first day of August next, if the ties and rails can be had by that time." The said plaintiff also agreed to build the said wharf in conformity with the plan and design as set out in the contract; "the said wharf or pier and the whole of the said division of the said road to be finished and ballasted, and the work thus contracted to be done and performed by the said party of the first part, is to be finished and completed by the thirty-first day of October next." "The whole compensation" to be paid to the plaintiff by the company was the sum of $326,000, payable in stocks and bonds as follows: The sum of $176,000 in bonds authorized by the state of Delaware to be issued to the company, and the sum of $150,000 in certificates of full-paid stock of the company. The first payment or installment was to be made as soon as materials had been supplied and work performed on the said railroad or pier,

"or on either," to the amount of $60,000, according to the estimate of the company's engineer; and at the end of each month thereafter, as the work progressed, further payments were to be made by the delivery of bonds and stocks, in amounts estimated to be due by the engineer, and in the same proportions of bonds to stocks as provided for the payment of the whole compensation.

The plaintiff further agreed to begin the work in 30 days from the date of the contract, and to have all the piles of the wharf driven by the last day of July following, and, immediately upon signing the contract, to subscribe for $150,000 in shares of the stock of the company, the same to be paid for in work and materials. This is a brief summary of the terms and provisions of the contract.

The declaration contains seven counts, each one setting forth the articles of agreement in full, and assigning breaches. The defendant has demurred generally and specially to all of the counts, excepting the fourth and seventh, to which he has pleaded. The cause of the demurrers to the first two counts are alike in substance, and may be considered together. These counts assign breaches of the defendant's covenants (*first count*) "to permit the said plaintiff to carry on, prosecute, and perform the work by him in said articles of agreement covenanted and agreed to be done until the work so covenanted and agreed to be done should be fully done, performed, finished, and completed by the said plaintiff in manner as provided by said articles of agreement, and in the plan, design, and specifications therein referred to, or until the thirty-first day of October, in the year of our Lord one thousand eight hundred and sixty-nine, whichever should first happen;" and (*second count*) "to permit the said plaintiff to fully do, perform, finish, and complete, by the thirty-first day of October," etc., "the work by him in said articles of agreement covenanted and agreed to be done and performed."

The causes of demurrer are (1) that the company did not make the covenants declared on; (2) that the said covenants are inconsistent with and repugnant to the express provisions of the articles of agreement; (3) that the breaches do not correspond with the covenants as set forth in the said counts. By these demurrers the defendant denies the existence of the implied covenants declared on, and also contends that if such covenants can be implied they are not absolute, but subject to certain conditions precedent, to-wit: (1) That the plaintiff should subscribe for the stock upon the execution of the contract, May 8, 1869; (2) that he should begin work in 30 days from that date; (3) have all the piles of the wharf driven by the last day of July; and (4) ballast, finish, and complete the third division by the first of August, if the rails and ties could be had by that time.

The first question, then, is, do those articles contain the implied covenants declared on? No particular words are necessary to create a covenant. Any words in a sealed instrument by which a party

manifests an intention to do or not to do an act, either by himself or a third person, if the act be lawful, will make a covenant, and the law will hold him to his undertaking. Implied covenants depend for their existence on the intendment and construction of law. There are some words which do not of themselves import an express covenant; yet, being made use of in certain contracts, have a similar operation and are called covenants in law, and are as effectually binding on the parties as if expressed in the most unequivocal terms. There may be implied covenants in a deed in which there are express covenants, but there can be none contradictory to or inconsistent with or repugnant to express covenants. Platt, Cov. 40; *Randel* v. *C. & D. Canal Co.* 1 Har. 270. It follows, from an application of these elementary principles, that where one party employs another to perform certain work, and they enter into a contract by which one covenants to do the work and the other promises to pay for it, there arises an implied covenant that the promisor will permit the work to be begun and carried on according to the terms of the contract. There is no necessity, therefore, for making any express covenant for doing what was clearly understood by the contracting parties should be done, and without which the covenants on either side could not be performed. If, on the faith of these articles of agreement, the plaintiff had expended time and money in collecting materials and engaging laborers, and was actually employed in carrying on and prosecuting the work he had agreed to perform, and was ready, willing, and able to complete the same when he was stopped by the company, it is no answer to plaintiff's claim for damages by reason of such stoppage, to say that there was no express covenant on the part of the company to permit him to go on. The law will imply such a covenant; and this principle is nowhere more clearly stated than by Justice CLIFFORD in *Hudson Canal Co.* v. *Penn. Coal Co.* 8 Wall. 276:

"Undoubtedly, necessary implication is as much a part of an instrument as if that which is so implied was plainly expressed; but omissions or defects in written instruments cannot be supplied by virtue of that rule, unless the implication results from the language employed in the instrument, or is indispensable to carry the intention of the parties into effect; as, where the act to be done by one of the contracting parties can only be done upon something of a corresponding character being done by the opposite party, the law, in such a case, if the contract is so framed that it binds the party contracting to do the act, will imply a correlative obligation on the part of the other party to do what is necessary on his part to enable the party so contracting to accomplish his undertaking and fulfill his contract." "So, if one person engages to work and render services which require great outlay of money, time, and trouble. and he is only to be paid according to the work he performs, the contract necessarily implies an obligation on the part of the employer to supply the work."

And the same court, in *U. S.* v. *Behan*, 110 U. S. 346, speaking through Justice BRADLEY, says:

"It is to be observed that when it is said in some of the books that where one party puts an end to the contract, the other party cannot sue on the con-

tract, but must sue for the work actually done under it, as upon a *quantum meruit*, this only means that he cannot sue the party in fault upon the stipulations contained in the contract, for he himself has been prevented from performing his own part of the contract upon which the stipulations depend. But surely the willful and wrongful putting an end to a contract, and preventing the other party from carrying it out, is itself a breach of the contract, for which an action will lie for the recovery of all damage which the injured party has sustained. The distinction between those claims under a contract which result from a performance of it on the part of the claimant, and those claims under it which result from being prevented by the other party from performing it, has not always been attended to."

The plaintiff in the present case claims not compensation for performance, but damages for prevention. Each count is a declaration of itself, and the two which we have been considering are on covenants by the company which are plainly implied by intendment of law from the words of the contract and the intention of the parties as therein expressed. But conceding the existence of the implied covenants on the part of the company to permit the plaintiff to carry on, prosecute, and complete the work in manner and form as provided by the contract, or by the thirty-first of October, the defendant objects to the plaintiff's right of action because these counts do not set out or allege certain dependent covenants, or conditions precedent, and their performance by him or a waiver of performance by the company. The prevention complained of was on the twentieth of August, 1869, and the question arises, what, if any, were the covenants to be performed by the plaintiff before that time in order to entitle him to maintain this action? The defendant relies on the stock subscription, the beginning of the work in 30 days, the driving of the piles by the last day of July, and the completion of the third division by the first of August, as conditions precedent to the plaintiff's right to go on and finish the work.

As in the case of implied covenants, no precise technical words are required to constitute a condition precedent. Whether a condition be precedent or subsequent, or a covenant be dependent or independent, must be gathered from the words and nature of the agreement, which is to be construed according to the intention of the parties as far as that can be collected from the instrument, to which intention, when once discovered, all the technical forms of expression must give way; and, however transposed the covenants may be, their precedence must depend on the order of time in which the intent of the transaction requires the performance. 1 Selw. N. P. 533, tit. "Covenant." Covenants have been divided into three general classes: *First*, covenants which are conditions and dependent, in which the performance of one depends on the prior performance of another, and therefore, until the prior condition be performed, the other party is not liable to an action on his covenant. *Second*, covenants which are mutual conditions to be performed at the same time; and in these, if one party is ready and offers to perform his part, and the other neglects

or refuses to perform his, he who is ready and offers, has fulfilled his engagement and may maintain an action for the default of the other, though it is not certain that either is obliged to do the first act. The *third* class are called mutual or independent covenants, where either party may recover damages from the other for the injury he may have sustained by a breach of the covenants in his favor, and where it is no excuse for the defendant to allege a breach of the covenants on the part of the plaintiff. There is no unvarying rule by which the distinction between covenants and conditions can be accurately ascertained, since no particular words are required to create either, and it is immaterial, in point of construction, whether the clause in the instrument be placed before or after others. Platt, Cov. 71, 72.

The plaintiff was to complete the whole work by the thirty-first day of October, supposing that to be the ultimate period of time allowed him under the contract; and we are to discover, if we can, from its language, the circumstances attending the transaction and the objects for which the contract was entered into,—whether the parties intended and understood that every time stipulation mentioned in the contract was to be considered as a condition precedent, the non-performance of which would deprive the plaintiff of his right of action for the defendant's prevention of the performance of work to be done thereafter. For instance, in order of time, the first thing to be done was the subscription for the stock. Was it the intention of the parties that if, without immediately subscribing, the plaintiff should begin the work in 30 days after the date of the contract, and be actually employed in the performance of all the other covenants contained in it, though he was ready and willing to subscribe, and would have subscribed except for the prevention by the company, he should not have the right to maintain this action for his prevention by the company of the performance of the other covenants? The subscription was for the plaintiff's benefit, and was in no manner essential to his beginning or carrying on the work. The stock was to be paid for by work and materials, and the certificates for the same could not be delivered to him until he had subscribed for it on the books of the company. The company could in nowise be injured by his delay or neglect to perform the subscription covenant, and it had no necessary connection with covenants to be performed subsequently in point of time; whether he subscribed before or after beginning the work could make no difference. It cannot, therefore, be implied that this was a condition precedent. So, also, in relation to the driving of the piles for the wharf and completing the third division by the last of July and first of August, respectively, the plaintiff might fail in point of time to perform these covenants, and yet be able and have the right to perform the whole work on or before the thirty-first day of October. These time stipulations were not so necessarily and indissolubly connected that one should be made dependent on the other. The company was well secured against the default or the neglect of the plain-

tiff, who was to receive no compensation until he had furnished work and materials to the amount of $60,000 under the estimate of their own engineer, and until the materials and product of the plaintiff's work had become their property permanently invested for their use. Had the parties intended that these time stipulations should be considered as conditions precedent, in the manner now claimed by the defendant, it would have been easy for them to have expressed that design. But, not only was the company secure in retaining the compensation agreed to be paid at the end of each month; it also had the power of annulling the contract, on reasonable notice to the plaintiff, by reason of his misconduct, delay, or neglect, and holding him liable for the breach of any of his covenants in an action for damages. Supposing the main purpose of the contract was the completion of the whole work by the thirty-first of October, and that the plaintiff was in fact ready and willing and able to perform that covenant, and that the interpretation we have given to this contract in reference to what have been called the time stipulations be correct, it follows that the prevention by the company was wrongful, and the plaintiff is entitled to his action. *P., W. & B. R. Co.* v. *Howard,* 13 How. 339.

There is no doubt of the truth of the legal propositions stated in the defendant's argument, that, where there are dependent covenants, a party cannot recover without averring that he has performed, or was ready and willing to perform, or was prevented from performing by the other party; and that, where several things are to be done by the plaintiff precedent to the performance of the defendant's part of the agreement, it is necessary for the plaintiff to aver performance of all the things to be done by him, unless the same has been excused or waived. But conceiving, as we do, that the covenants we have been considering are mutually independent ones, we are of the opinion that the demurrers to the first two counts cannot be sustained.

The third count is on the company's covenant to pay the full sum of $326,000 in bonds and stock for the work and materials contracted for, and the breach assigned is for the non-delivery of the said bonds and stock, or any part thereof. This count also alleges that, while the plaintiff was engaged in good faith in carrying on the work, and was ready, able, and willing to finish it according to the terms of the contract, and was ready and willing to subscribe for the stock, and would have subscribed but for the wrongful prevention by the company, the company, on the twentieth of August, 1869, and before any estimate had been made by its engineer, wrongfully prevented the plaintiff from further carrying on the said work, and from subscribing for the stock, and thereby wholly discharged him from the performance of his covenant, and prevented the making of any estimate, etc. The plaintiff, by this count, seeks to recover the whole amount of the compensation agreed upon as the consideration for all the materials and work which were to be furnished and performed in the completion of the entire work. His assumption is that the

wrongful prevention by the company, under the circumstances, was equivalent to a full performance by him of what he had contracted to do, and therefore entitles him to the whole amount of compensation named in the contract. The claim is not for materials or work actually furnished and done, but is made on the basis of a theoretical and technical performance of the plaintiff's covenant to complete the laying of the ties and rails, and constructing the pier, on or before the thirty-first of October.

We think that this demand is too broad. It does not appear reasonable that the defendant should be compelled to pay for labor and materials which exist only in the imagination, nor do we find any principle or authority which supports the plaintiff's proposition to this extent. It is not like the case of the sale and delivery of a chattel, where the seller has delivered, or is ready to deliver, and the purchaser refuses to pay for or to take the article. Justice may require that the plaintiff should be put into as favorable a position as he would have been had he been permitted to go on and finish the work under the contract; that is, he should receive all the advantages and profits that he could have gained if the contract had been fully performed on both sides; but that would be a measure of damages for losses actually sustained, and of the deprivation of profits which might have accrued, and which would rarely or never equal in amount the whole consideration, especially in a contract of this nature, where the work and materials would necessarily involve a large outlay of time and money.

In *Laird* v. *Pim*, 7 Mees. & W. 473, the plaintiff sought to recover from the defendants the whole amount of the purchase money of a lot of land of which the defendants had gone into possession under an agreement to pay for it as soon as the conveyance should be completed. The plaintiff averred that he offered to execute a conveyance, and would have tendered a proper conveyance, but that the defendants discharged him from so doing. The plaintiff had a verdict for £680, and on a rule to show cause why the damages should not be increased by the sum of £4,125, the amount of the purchase money, it was held that "the measure of damages in an action of this nature is the injury sustained by the plaintiff by reason of the defendants' not having performed their contract. The question is, how much worse is the plaintiff by the diminution in the value of the land, or the loss of the purchase money, in consequence of the non-performance of the contract? It is clear that he cannot have the land and its value, too. A party cannot recover the full value of a chattel, unless under circumstances which import that the property has passed to the defendant; as in the case of goods sold and delivered, where they have been absolutely parted with, and cannot be sold again."

In *Cort* v. *Ambergate, etc., Ry. Co.* 79 E. C. L. 126, it was held that, on a contract for the manufacturing and supply of goods from

time to time, to be paid for after delivery, if the purchaser, having paid for and accepted a portion of the goods, gives notice to the vendor not to manufacture any more, proof of such notice will entitle the plaintiff to recover on a count alleging that he was ready and willing to perform the contract, and that the defendant refused to accept the residue of the goods, and prevented and discharged the plaintiff from supplying them, and from further executing the contract. Such notice is prevention and discharge, and the vendor, having been desirous and able to complete the supply, may, without manufacturing and tendering the rest of the goods, maintain an action for breach of the contract; and the jury were directed to give such damages as would leave the plaintiff in the same situation as if the defendants had fulfilled their contract. In that case it was not claimed that the plaintiff was entitled to receive the whole consideration, but that the prevention and discharge were equivalent to a performance on his part, in so far that it enabled him to maintain an action for breach of contract. But in the third count we understand the plaintiff to go further, and to claim the full compensation named in the contract, without reference to what he has actually done, or to what might be judged on the evidence to be a just and reasonable award for his damages. For these reasons we think this count bad.

The fifth count alleges the performance of the work, and that the same was done and all the materials furnished in manner required in the articles of agreement on or before the thirty-first day of August, 1870, and that the same were accepted by the defendant. Breach, that the company had not, within a reasonable time thereafter, paid or delivered the said bonds or stock, or any portion of them. The objections taken to the sufficiency of this count by the defendant are that the time stipulations were not observed by the plaintiff as required by the contract, the omission to state that these stipulations were waived by the company, and that it does not appear that any estimate or estimates were made by the engineer.

The time stipulations having been disposed of, we are brought to a consideration of the effect of the acceptance of the work and of the question of the time of completion. Whether time is or is not of the essence of a contract depends on the expressions and intentions of the parties. The rule is, where the work has been commenced, the completion of it by a day named will not, in general be a condition precedent to the workman's right to the stipulated hire. Thus, in the case of a contract to build a house, where the employer furnishes the land, which is the principal material for the work, if the house is not built by the time specified in the contract, but is afterwards completed, the employer, who has got the house, and has had the value of his land increased by its erection thereon, can never be permitted to free himself from his obligation to pay for it by alleging that the work was not done by the time appointed. The stipulation as to time is not,

in such a case, a condition going to the essence of the contract. The parties never could have contemplated that if the house were not completed by the day named the builder should have no' remuneration. At all events, if an engagement so unreasonable was contemplated, the parties should have expressed themselves with a precision that could not be mistaken. Add. Cont. 447. Here the company does not object that the work was not done according to the plan and specifications, nor is there any denial of the alleged fact of acceptance by them on the thirty-first of August, 1870. Admitting these facts, on what principle should the company be exonerated from their covenant to pay the compensation agreed on, or the plaintiff be debarred from maintaining his action to recover the same? They have the materials furnished by the plaintiff and the product of his labor, and the main purpose of the articles of agreement has been accomplished, so far as they were concerned, in the laying of the ties and rails, and the construction of the pier by the plaintiff, whereby their property has been permanently increased in value; but because the work was not completed by the day named in the contract the defendant denies the right of the plaintiff to recover. In the absence of any expression of intention of the parties that a failure to complete the work by that day should be a forfeiture of the compensation, coupled with the uncontradicted fact of acceptance, and with the inference that the company must have permitted and consented to the plaintiff's carrying it on after that day, the fair conclusion is that the completion of the work on the thirty-first of October, 1869, was not intended to be a condition precedent to the delivery of the stock and bonds. The reasonable implication is that within a reasonable time after the completion, whether on the thirty-first day of October, 1869, or on a subsequent day, the company would pay.

The supreme court of the United States, in *Van Buren* v. *Digges*, 11 How. 461, and in *P., W. & B. R. Co.* v. *Howard*, 13 How. 339, has decided that a failure of performance by the time fixed in the contract does not necessarily deprive the party who does the work of the right to demand and receive the contract price for what has been done under the contract. In the last-named case the plaintiff had contracted to finish certain work by the first of November, 1836; but, failing in this, he continued the work until January 18, 1838, when the contract was determined by the company; and the question was whether the covenant to pay was dependent on the covenant to finish the work by the first day of November. The court, speaking through Justice CURTIS, says:

"We do not deem it needful to review the numerous authorities, because we hold the general principle to be clear, that covenants are intended to be considered dependent or independent, according to the intention of the parties, which is to be deduced from the whole instrument; and in this case we find no difficulty in arriving at the conclusion that the covenants were throughout independent. There are in this instrument no terms which import a condition, or expressly make one of these covenants in any particular

dependent on the other. There is no necessary dependency between them, as the pay for work done may be made though the work be done after the day. The failure to perform on the day does not go to the whole consideration of the contract, and there is no natural connection between the amount to be paid for work after the day and the injury or loss inflicted by a failure to perform on the day. Still, it would have been competent for the parties to agree that the contractor should not receive the monthly installment due in November, if the work should not then be finished, and that he should receive nothing for work done after that time."

Supposing, however, that the time for completion was essential, the plaintiff contends that it is not now competent for the company, after its acceptance of all the work performed after October 31, 1869, and treating the contract as continuing in force thereafter, to plead in bar the failure to perform by that day. The company might have annulled the contract; but, not having done so, and having elected to allow the plaintiff to go on with it, they cannot now be permitted to set up the plaintiff's failure to perform in time as a complete defense to this action. The time originally appointed for performance may be waived by the conduct and acts of the parties, and by the contract being treated and acted upon as a continuing contract after the appointed time. Add. Cont. 176. The acts of the parties thus render an express waiver on the part of the company unnecessary, and a statement or description of such acts as amount to a virtual waiver will be all that is requisite. This the plaintiff has done in the fifth count. The only remaining objection to this count is its omission to allege the making of the estimates by the engineer as the work progressed or on its final completion. This allegation was not necessary, because those estimates were to be made only for the purpose of ascertaining when the plaintiff should have earned $60,000, and the amounts of the monthly payments thereafter, and do not apply to the compensation as a whole. The plaintiff had the option of receiving his pay monthly, after the first installment had been paid, on the engineer's estimate of the value of the materials supplied and work done for each month, or of waiting until the whole work had been done under the contract and receiving the total contract price. This was fixed at $326,000, and the plaintiff could receive no portion of it as the work progressed, except on the engineer's estimates; but these estimates do not relate to or affect the final payment to be made of any balance that might have been due or the payment of the whole sum, if no portion of it had been previously paid, on the full performance of the contract. Payment was at no period to be made in advance of the work. The estimates were to fix the amounts of the monthly installments, but could not control, increase, or diminish the whole compensation agreed upon to be paid.

The demurrer to the sixth count rests on the same grounds as those taken to the fifth count, with the exception of the estimates, and must be overruled for the same reasons.

*Demurrers to the pleas to the fourth count.* The second plea tra-

verses the allegation that at the time of the alleged wrongful prevention the plaintiff was in "good faith" engaged in carrying on, prosecuting, and performing said work. The plaintiff objects to this plea that the "good faith" was not a condition precedent to his right to maintain this action; that the plea seeks to raise an immaterial issue; and that it is evasive and argumentative in that it only indirectly denies the wrongful prevention. The plea is bad for the reason that it attempts to set up as a fact that which is properly only a matter of evidence, namely, whether or not the plaintiff was acting in good faith on the twentieth of August, 1869, when the defendant stopped him from going on with the work. It goes to the intention of the plaintiff, and not to his acts. It offers an immaterial issue, and does not directly deny the wrongful prevention complained of.

*Third.* The third plea denies that the plaintiff was ready, willing, and able to further carry on the work at the time when he was prevented, etc. This is a direct traverse of the plaintiff's statement, and is a good plea in bar; for, unless he was ready, willing, and able to go on and finish the work at the time when, etc., he is certainly not entitled to maintain this action. His right to the recovery of any damages for the alleged wrongful prevention depends wholly on his willingness and ability to perform what he had agreed to. *Cort* v. *Ambergate, etc., Ry. Co.* 79 E. C. L. 143. His want of ability to go on and finish the work was a good and sufficient cause for stopping him.

*Sixth.* The sixth plea, that the company did not wrongfully discharge the plaintiff, does not confess and avoid, or traverse and deny, the matter set forth in the count. The averment is that the plaintiff was wholly discharged by the company by reason of its wrongful prevention. The plea is therefore argumentative, because, while not directly traversing the wrongful prevention or the discharge, it offers a different issue, viz., whether the plaintiff was rightfully or wrongfully discharged.

*Seventh.* For the same reasons, the seventh plea, being of like character and nature as the sixth, is also demurrable.

*Eighth.* This plea traverses what is not contained in the count. There is no allegation of a wrongful prevention of the making of the estimates in this count. The averment is that the plaintiff was wrongfully prevented from going on with the work, whereby the making of any estimate was prevented. The plea presents a negative pregnant, by inferentially acknowledging that the making of the estimates was prevented by the company, though such prevention was not wrongful. The plea is therefore bad on this ground. Gould, Pl. *c.* 6, §§ 29–33.

*Tenth and Eleventh.* These pleas set up the failure of the plaintiff to subscribe for the stock on the signing of the articles, and that he did not begin work within 30 days after the date of the contract. These matters have been decided not to be conditions precedent to

the plaintiff's right of action, and the demurrers to these pleas are therefore sustained.

*Twelfth.* That the plaintiff did not, with reasonable diligence, and within a reasonable time after the date of the contract, in good faith begin the work, etc. It is objected that these were not conditions precedent, and that the plea, being in the nature of a plea in confession and avoidance, does not in terms confess or admit any of the allegations contained in the count. This plea, if intended to be in justification of the company's acts, should expressly or tacitly confess the act which it is intended to justify. Avoidance cannot be pleaded unless the act complained of be admitted. Gould, Pl. *c.* 6, § 111.

The defendant might have pleaded abandonment on the part of the plaintiff, or his intention of abandonment, and given the want of beginning in reasonable time and the want of reasonable diligence in evidence of such abandonment, or of the intention to abandon the work.

*Fourteenth and Fifteenth.* These pleas, depending on the non-performance by the plaintiff of the subordinate time stipulations as a bar to this action, cannot be sustained, since we have already decided that those stipulations are not conditions precedent.